UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | 10 C 999 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| DAVID REDNOUR, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Petitioner Rodney Williams, who is serving a lengthy sentence in Illinois state prison for the first degree murder of Mark Van Dyke and the attempted first degree murder of Vincent Bingham, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Williams seeks habeas relief on the ground that his trial attorney was constitutionally ineffective in various respects. Williams's petition is denied, and he also is denied a certificate of appealability.

**Background**

A federal habeas court presumes correct the factual findings made by the last state court to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("We give great deference to state court factual findings. After AEDPA, we are required to presume a state court's account of the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotation marks omitted); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes,* 334 F.3d 696, 704 (7th Cir. 2003). The Appellate Court of Illinois is the last state court to have adjudicated Williams's case on the merits. *See People v. Williams*, No. 1-07-0009 (Ill. App. Dec. 31, 2008)

(Doc. 17-20); *People v. Williams*, No. 1-01-4022 (Ill. App. Aug. 6, 2004) (Doc. 17-12); *People v. Williams*, No. 1-97-4527 (Ill. App. Mar. 1, 1999) (Doc. 17-5). Williams has not rebutted—indeed, he has not even attempted to rebut—the state appellate court's factual findings. The following sets forth those facts as well as the procedural background of the state criminal and post-conviction proceedings.

Vincent Bingham, the victim of the attempted first degree murder and the prosecution's sole eyewitness, testified that on February 5, 1992, Williams shot him in the face and then shot Mark Van Dyke twice in the head. Van Dyke died and Bingham was severely injured. Prior to the shootings, Van Dyke and Williams had an argument regarding drugs, agreed to take their dispute to Van Dyke's "gang chief," and were driven there by Bingham. On the way, Bingham stopped his car and got out to speak with his fianceé and her parents. When Bingham returned to the car, Williams shot him and then Van Dyke.

When interviewed by the police, Bingham described his assailant as a 25-28 year old black male with light skin, standing about 5'8" to 5'10", weighing 160 to 170 pounds, and having hair shorter than his own, a mustache, an earring, and a pitchfork tattoo on his left arm. The detective assigned to the case, Hugo Conwell, testified that Bingham told him that his assailant went by the name "Eric" or "Rick." Williams's alias was "Ricky Shelton," but Williams maintained that he was not wearing an earring and that Bingham's description of the tattoo and hair did not match his own. On December 23, 1992, Bingham made a tentative photo identification of Williams. In March 1993, Bingham identified Williams during a lineup. Testifying at trial, Bingham identified Williams a third time.

The jury convicted Williams of the first degree murder of Van Dyke and the attempted first degree murder of Bingham. Shortly thereafter, Bingham signed an affidavit stating that

Williams did not shoot him and that he did not know who shot him.  At a subsequent hearing, Bingham recanted portions of the affidavit and testified that Williams was indeed the assailant.  Bingham explained that the affidavit had been prepared by a private investigator hired by Williams's attorney and that he had signed the document, some of which was blank, without reading it.  Although not persuaded by Bingham's explanation, the state trial court declined to disturb the verdict, concluding that Bingham's "unwavering" trial testimony deserved more weight than his affidavit.

At the same hearing, Detective Conwell testified that over the course of his investigation he interviewed Bingham nearly fifteen times and conducted at least one interview with Bingham's brother, Gary.  Gary submitted his own affidavit averring that Conwell asked him to encourage his brother to accuse Williams.  Gary recanted that allegation at the hearing, and the trial court determined that Conwell had acted properly.

Williams appealed his conviction and sentence, arguing that: (1) he was not proved guilty beyond a reasonable doubt; (2) Detective Conwell gave perjured testimony; (3) Conwell's pressure on Bingham should have been disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963); (4) newly discovered evidence called for a new trial; (5) his trial attorney rendered ineffective assistance of counsel by failing to subpoena Bingham's psychiatric records, to introduce expert testimony regarding Williams's tattoos, and to show Williams did not have an alias; and (6) the sentence was excessive.  Doc. 17-2.  The Appellate Court of Illinois affirmed.  *People v. Williams*, No. 1-97-4527 (Ill. App. Mar. 1, 1999) (Doc. 17-5).  Williams then filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois, pressing the same claims.  Doc. 17-6.  The PLA was denied.  *People v. Williams*, 720 N.E.2d 1105 (Ill. 1999).

Williams then filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*. In his petition, Williams argued: (1) that he was actually innocent; (2) that his attorney was ineffective for failing to obtain Bingham's psychiatric records and failing to adequately present Bingham's psychiatric history at trial; (3) that he was denied due process by the trial court's *in camera* review of Bingham's mental health records and its failure to transmit those records to the state appellate court; (4) that he was denied a fair trial when his attorney failed to obtain or present Bingham's psychiatric records; (5) that exculpatory evidence was improperly withheld; and (6) that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Doc. 17-8. The state trial court dismissed the post-conviction petition. Doc. 17-9.

On appeal, Williams made four arguments: (1) that Bingham was pressured into making a false identification; (2) that newly examined psychiatric records revealed that Bingham suffered from mental illness and, if the documents had been presented at trial, the jury would have acquitted, buttressing Williams's claim that his trial counsel was ineffective in failing to investigate and subpoena Bingham's psychiatric records and present them at trial; (3) that Williams was denied due process when the trial court incorrectly instructed the jury about eyewitness testimony; and (4) that the sentence violated *Apprendi*. Doc. 17-10. The state appellate court affirmed in part and reversed in part. *People v. Williams*, No. 1-01-4022 (Ill. App. Aug. 6, 2004) (Doc. 17-12). The appellate court determined that the trial court had erred in disregarding an expert affidavit submitted by Williams regarding the nature and importance of Bingham's mental health records. The appellate court remanded the case only to the extent that it related to Bingham's psychiatric records, and it affirmed the trial court's decision in all other

respects. The state supreme court denied Williams's PLA. *People v. Williams*, 829 N.E.2d 793 (Ill. 2005).

On remand, the trial court conducted an evidentiary hearing at which Dr. James Knoll, an expert in forensic psychiatry, testified for Williams. Dr. Knoll testified that Bingham had a history of mental illness, that various mental health records documented Bingham's condition, and that, in his opinion, these records indicated that Bingham's ability to perceive and recollect the events of February 5, 1992, was impaired. However, Dr. Knoll admitted that he had not interviewed Bingham, that he could not diagnose with any certainty what mental illnesses Bingham suffered from at the time of the offense or at the time of the trial, and that he could not make any specific medical determinations for the period between Bingham's release from a hospital in 1992 and his last in-court testimony in 1997. The state trial court determined that even if Bingham's medical records had been obtained by trial counsel and used at trial, there was not a reasonable probability that the jury's verdict would have been different. Doc. 17-16.

Williams appealed, arguing that: (1) his counsel's failure to investigate the medical records and present expert testimony was prejudicial; and (2) the trial court exceed its authority by substituting its judgment for that of Dr. Knoll. Doc. 17-17. The state appellate court affirmed. *People v. Williams*, No. 1-07-0009 (Ill. App. Dec. 31, 2008) (Doc. 17-20). Williams then filed a PLA, arguing that: (1) the appellate court applied the wrong standard of review; (2) the appellate court impermissibly substituted its own opinion for that of Dr. Knoll; and (3) trial counsel's failure to investigate Bingham's medical history prejudiced Williams. The state supreme court denied the PLA. *People v. Williams*, 910 N.E.2d 1132 (Ill. 2009).

Williams then timely filed his federal habeas petition.

**Discussion**

Williams contends that his trial attorney was constitutionally ineffective in three respects: (1) by failing to investigate Bingham's mental health history and failing to impeach Bingham at trial regarding his mental health; (2) by failing to investigate and present evidence regarding Detective Conwell's interactions with Bingham; and (3) by failing to consult with a forensic psychiatry expert regarding Bingham's mental health and to present that expert at trial. Doc. 10 at 19-26. The first argument fails on the merits under the strict standard imposed by 28 U.S.C. § 2254(d), and the second and third arguments are procedurally defaulted.

A. **Second and Third Ineffective Assistance Claims**

"To preserve a question for federal collateral attack, a person must present the contention to each level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)). Accordingly, "[a] procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted). The Warden contends that Williams procedurally defaulted his claims that his trial counsel was ineffective in failing to investigate and present evidence regarding Detective Conwell's interactions with Bingham and in failing to consult with a forensic psychiatry expert regarding Bingham's mental health and to present that expert at trial. Doc. 16 at 21-22, 24-25.

The Warden is correct. Williams did not raise either of those contentions at all in state court, let alone through one full round of state court review. The fact that Williams properly preserved a *different* ineffective assistance claim (pertaining to Bingham's mental health history) through one full round of state court review does not excuse his failure to preserve the other two

claims. *See Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) ("if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted"); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) ("the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to procedural default"); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994) ("Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review."); *Curtis v. Randolph*, 2010 WL 3937465, at *8 (N.D. Ill. Oct. 5, 2010). Therefore, the second and third ineffective assistance claims are procedurally defaulted. *See Mulero v. Thompson*, 668 F.3d 529, 535-36 (7th Cir. 2012); *Johnson v. Pollard*, 559 F.3d 746, 751-52 (7th Cir. 2009).

A habeas petitioner may overcome a procedural default (1) by demonstrating cause for the default and actual prejudice, or (2) by showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) (citations and internal quotation marks omitted). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have

convicted him in the light of the new evidence.'" *Smith*, 598 F.3d at 387-88 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Williams does not argue that either exception to the procedural default rule applies here. Any such argument accordingly is forfeited. *See Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) ("[P]rocedural default will be excused if a defendant can show that a failure to review the defendant's claims would result in a fundamental miscarriage of justice. Franklin, however, does not make this argument and we will not make it for him.").

### B. First Ineffective Assistance Claim

Williams did properly exhaust his claim that trial counsel was ineffective for failing to investigate Bingham's mental health and to use Bingham's mental health history to impeach his testimony at trial. Because Williams properly exhausted that claim, and because the state appellate court adjudicated that claim on the merits, the claim is governed by § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (one citation omitted). As noted above, Williams does not argue that the state appellate court's ruling was based on an unreasonable determination of the facts. Nor does Williams contend that the state appellate court's decision was "contrary to" clearly established law. Rather, Williams maintains that the state appellate court's decision unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984).

For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785 (internal quotation

marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 786 (internal quotation marks omitted). Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

For Williams to have prevailed in state court on his ineffective assistance claim, he had to show (1) that his attorney's performance was deficient and (2) that prejudice resulted therefrom. *See Strickland*, 466 U.S. at 687. The state appellate court held that Williams did not satisfy the prejudice prong of *Strickland*, reasoning as follows:

> Demonstrating prejudice under the second prong [of *Strickland*] requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Showing prejudice is more than an outcome-determinative test, and requires that deficient performance rendered the result of the proceeding unreliable or fundamentally unfair.
>
> In the case at bar, we find that defendant has failed to show that he was prejudiced by his defense counsel's allegedly deficient performance. We acknowledge that mental health history is relevant as it relates to a witness' credibility, and is thus a permissible area of impeachment, but defendant must establish its relevan[ce] before such evidence may be introduced. In his argument, defendant primarily relies on Dr. Knoll's testimony and examination of [Bingham's] mental health history, maintaining that the introduction of it would have rendered [Bingham's] testimony unreliable.
>
> We now turn to the records relating to [Bingham]. His most recent IDOC [Illinois Department of Corrections] record was created approximately three years before he witnessed the events of the underlying case, and approximately eight years prior to his testimony in the trial. Several records were created almost 10 years before the offense. This court has noted that remoteness in time is a significant factor in determining the weight and relevance of any psychiatric record. Although [Bingham]

received social security benefits through 2002, it is significant that the recent records addressed dialysis [Bingham] was receiving due to kidney failure. The disability determination relied on by defendant occurred in 1989, three years before the offense was committed. Added to this, we also note that the psychiatrists at Menard Correctional Center opined throughout the years that [Bingham's] complaints were considered "manipulative in nature and not real," and his self-reported hallucinations were "very dubious in nature." Furthermore, just prior to his release from Menard Correctional Center, it was noted that no delusions could be detected, he was "showing a normal trend of thought," and that his memory for recent and remote events was not impaired.

The most recent evidence of [Bingham's] mental health was contained in records generated by Mt. Sinai Hospital following the shooting. Although the report states that during his hospitalization, he developed depression and "a questionable report of auditory hallucinations," he denied psychotic or affective symptoms throughout his hospitalization. Furthermore, [Bingham] attributed his depression to the permanent injuries he sustained from his gunshot wound, which included being paralyzed on the right side of the face. Moreover, the discharge summary from the hospital stated "[Bingham] was alert and oriented to person, place, and time. Thought process showed no formal thought disorder. There was no suicidal or homicidal ideations. There was no evidence of auditory or visual hallucinations or other first rank signs. Judgment and insight were good."

Even Dr. Knoll stated that because he never interviewed [Bingham] or anyone who had interacted with him at relevant times, he could not diagnose with certainty what, if any, mental illness [Bingham] suffered from at the time of the shooting or at trial. He further admitted that the records were insufficient at all times after his discharge from Mt. Sinai Hospital, his identification of defendant, and his testimony at trial, to accurately diagnose [Bingham's] mental state during those times. Dr. Knoll stated he could not opine on the accuracy of [Bingham's] testimony or any actual impairment of his ability to perceive and recollect events. Dr. Knoll made it clear that he believed [Bingham] possessed a number of psychiatric factors that were associated with interrogative suggestibility and that at best only could have impaired his ability to perceive and recollect events.

After carefully reviewing [Bingham's] mental health history, Dr. Knoll's testimony, and the remainder of the record, we find that defendant has failed to meet his burden of demonstrating that he was substantially prejudiced by counsel's performance under *Strickland*. Because defendant has failed to satisfy the prejudice prong of the *Strickland* test, we decline to address defendant's argument regarding defense counsel's allegedly deficient performance.

Doc. 17-20 at 6-9 (some citations and internal quotation marks omitted). It cannot be said that the state appellate court's careful analysis is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

In urging the opposite result, Williams contends that his trial counsel's failure to obtain and use Bingham's mental health records prejudiced him because it resulted in Williams not establishing at trial that Bingham (1) was previously diagnosed with psychotic symptoms; (2) had a history of psychosis that required hospitalization; (3) had received mental health treatment at Menard Correctional Facility and other institutions; (4) had been prescribed Proloxin and Thorazine, but was non-compliant with the Thorazine; (5) abused cocaine; and (6) received Social Security payments for his mental condition. Williams further contends that the state appellate court unreasonably applied *Strickland* by not mentioning what he views as the weakness of the prosecution's inculpatory evidence and not considering the totality of the available evidence. In particular, Williams believes the appellate court's *Strickland* analysis was unreasonable because it did not consider the severity and chronic nature of Bingham's mental illness and because it distorted or avoided certain facts.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. It is true that the medical records of Bingham, the sole eyewitness, were neither subpoenaed nor used to impeach his perception and memory. The state appellate court correctly acknowledged that mental health history is relevant to a witness's credibility, but found that the medical records in question, even if they had been introduced, would not have led to a different outcome at trial. The court made

its determination after reviewing Bingham's mental health history, Dr. Knoll's testimony, and the "remainder of the record." Doc. 17-20 at 8.

The state appellate court's analysis of *Strickland* prejudice was reasonable and well within the boundaries of permissible differences of opinion. The medical records, in fact, represented a double-edged sword for Williams—while some records suggest that Bingham did in fact have mental disorders, others undercut that possibility and suggest that Bingham was not actually ill. The Menard Correctional Center records state that Bingham's complaints were manipulative and "not real," that Bingham exercised a normal trend of thought, and that he was capable of remembering recent and remote events. Doc. 17-20 at 7. The Mt. Sinai records similarly noted that Bingham's claimed mental infirmities were "questionable" and may not have qualified as an illness. *Id*. at 7-8. Given this, the state appellate court held with ample justification that even if the jury had been presented with Bingham's medical records, it still could have believed that Bingham was capable of perceiving and remembering the shooting. *See Tucker v. Cason*, 393 F. App'x 334, 339-40 (6th Cir 2010) (holding that the petitioner had not been prejudiced by counsel's failure to introduce the victim's medical records at trial because "we cannot find that it is reasonably probable the jury would have reached a different conclusion had the records been presented at trial").

Equally important, evidence of Bingham's mental illness, repeated hospitalizations, and criminal record *was* presented to the jury. Williams's trial counsel elicited evidence that: (1) Bingham had prior convictions for armed robbery, aggravated battery, and armed violence, and had been sentenced to thirteen years in prison; (2) Bingham received Social Security disability payments for mental problems; (3) Bingham spent time in Menard Correctional Center's psychiatric unit for mental issues; and (4) Bingham was involuntarily placed in the Psychiatric

Ward at Mt. Sinai Hospital. Doc. 10 at 10. Given this, it is unlikely that the additional, equivocal documents that Williams contends his counsel should have obtained would have materially altered the jury's view of Bingham's credibility and reliability as a witness. *See Monroe v. Davis*, 712 F.3d 1106, 1118 (7th Cir. 2013) ("In sum, the support that [the petitioner's brother's and sister-in-law's] testimony might have provided to the defense case was too weak to have required a competent attorney to call them as trial witnesses and to show that [the petitioner] was prejudiced by his attorney's omission to do so."); *Gray v. United States*, 341 F. App'x 193, 196-97 (7th Cir. 2009) (affirming the denial of habeas relief, despite trial counsel's failure to investigate a witness's mental illness, because "the jury heard no shortage of impeachment evidence against" the witness and "had plenty of reasons to doubt [the witness's] credibility, and one more reason was unlikely to sway the outcome"); *Stuckey v. Hulick*, 258 F. App'x 891, 895 (7th Cir. 2007) (holding that the petitioner had not been prejudiced by his trial counsel's failure to call an alibi witness where "significant testimony" established his guilt and where the proposed testimony "would not have bolstered [the petitioner's] alibi defense"); *Morgan v. Ramos*, 2010 WL 3463129, at *34-35 (N.D. Ill. Aug. 30, 2010) (denying habeas relief, despite trial counsel's failure to investigate and present evidence discrediting eyewitnesses, because counsel discredited the eyewitness testimony with comparable evidence during cross-examination); *Stephenson v. Gaetz*, 2009 WL 3379203, at *6-7 (N.D. Ill. Oct. 16, 2009) (denying habeas relief, despite trial counsel's failure to challenge a witness's competence, where the petitioner failed to show that the failure undermined confidence in the verdict).

Under these circumstances, the state appellate court did not unreasonably apply *Strickland*. As the Supreme Court recently cautioned, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."

*Richter*, 131 S. Ct. at 788 ("If this standard is difficult to meet, that is because it was meant to be.") (citations and internal quotation marks omitted); *see also id*. at 786. Given the ambiguity in Bingham's medical records and the introduction of comparable impeachment evidence at trial, the appellate court's analysis of *Strickland* prejudice does not come close to being "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87. It follows that Williams's first ineffective assistance claim does not satisfy § 2254(d).

**Conclusion**

Because Williams's claims either are procedurally defaulted or fail to satisfy the substantive standards of § 2254(d), his petition for a writ of habeas corpus is denied. Rule 11(a) of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicable standard provides:

> To obtain a COA under § 2253(c), a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

This court's denial of Williams's petition relies on settled precedent regarding the treatment of ineffective assistance claims and on the rules governing procedural default. The application of that law to Williams's petition does not present difficult or close questions, and so

the petition does not meet the applicable standard. The court therefore denies a certificate of appealability.

July 2, 2013                                     _____
                                                           United States District Judge